(C.D. 2243)

CARSON M. SIMON & Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 20, 1961)

*Morgan, Lewis & Bockius* (*Arthur R. Littleton* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Certain wallpaper sample books, imported from France, were classified by the collector of customs at the port of entry, as manufactures of paper, not specially provided for, and, accordingly, were assessed with duty at the rate of 17½ per centum ad valorem, pursuant to the provisions of paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462.

Plaintiff herein contends that said merchandise consists of samples entitled to free entry, by virtue of paragraph 1821 of the Tariff Act of 1930, as added by Public Law 85–211 (71 Stat. 486), approved August 28, 1957. An alternative claim for classification of the imported articles within the provisions of paragraph 1409 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for hanging paper, therein made dutiable at the rate of 1 cent per pound and 10 per centum ad valorem, has not been further pressed and is, therefore, deemed to have been abandoned.

The tariff provisions remaining in competition read, insofar as here pertinent, as follows:

Paragraph 1413, as modified, *supra*:

Manufactures of paper, or of which paper is the component material of chief value not specially provided for (except ribbon fly catchers or fly ribbons) _____ 17½% ad val.

Paragraph 1821, *supra*:

(a)  Except as provided in subparagraphs (b), (c), and (d), any sample to be used in the United States only for soliciting orders for products of foreign countries.

(b)  Subparagraph (a) shall apply to a sample only if its value does not exceed $1, except that this limitation shall not apply to (1) any sample which is marked, torn, perforated, or otherwise treated, in such a manner that such sample is unsuitable for sale or for use otherwise than as a sample, or (2) any sample which is covered by subparagraph (c) or (d).

The record shows that the involved wallpaper sample books were imported for the account of A. L. Diament & Co., a firm engaged in the wholesaling of wallpaper, fabrics, and furniture to interior decorators. The vice president of the company, who testified for the plaintiff, personally made the selection of the sample papers during a buying trip to France in late 1956 or early 1957. He chose those offerings of three French wallpaper houses which, in his opinion, and based upon his judgment, consistent with the standards of A. L. Diament & Co., would be salable to decorators in the United States. The sample books were specially prepared for his company at a cost of $4.80 per copy, the charge being made by reason of the expense of manufacturing these books.

One of the imported wallpaper books is in evidence as plaintiff's exhibit 1. It consists of some 97 sheets of wallpaper designs, each sheet approximately 12 inches by 20 inches. On the reverse side of each sheet, there appear the words, *inter alia*, "The Diament Collection," and an order number having reference to the stock of A. L. Diament & Co.

After importation, a collection of Italian wallpaper samples was assembled with the French papers, and the books were distributed, unsolicited, to decorators throughout the United States, for the purpose of obtaining orders for the French and Italian wallpapers exhibited. Pursuant to customary procedure for such distribution in this trade, payment, or in lieu thereof, return of the book, is requested. Some, but not many of the recipients, remit payment; some return the books; others simply retain them without payment.

When the papers have exhausted their potential for current selection of wallpaper designs, those books that are returned are destroyed.

The witness testified that the individual sheets could not be used as wallpaper for not a sufficient area of matching patterns could be obtained to cover a wall. Moreover, the reverse side is printed with a quality of ink that quite frequently shows through the paper after paste is applied. He further stated that paper dealers would not be interested in the used books because the tempera color of the designs, being water soluble, would tend to change the composition of paper.

By the weight of the evidence, which was not controverted, and, indeed, by apparent concession of counsel for the defendant, there is

little doubt that the importations at bar consist of samples. The question arises, however, whether these are the kind of samples accorded free entry by the provisions of paragraph 1821, *supra*.

Counsel for the plaintiff asserts that, within the literal context of paragraph 1821(a), the importations are samples "to be used in the United States only for soliciting orders for products of foreign countries" and, being marked in such a manner as to be "unsuitable for sale or for use otherwise than as a sample," the value limitation set by subdivision (b) is inapplicable. It is, therefore, contended that the instant samples are entitled to free entry as provided by said paragraph 1821(a).

The point is made by counsel for the defendant that the provisions of paragraph 1821 should be read in the light of the circumstances surrounding its enactment to the end that the purpose of the statute may be ascertained. Thus construed, it is contended, the language is confined to samples directly related to the solicitation of orders from foreign manufacturers, for the purpose of expanding international trade, and, hence, where an American concern purchases samples from abroad for distribution in this country, to its own potential customers, paragraph 1821 does not apply.

It is, of course, fundamental that the master rule for the construction of statutes is the ascertainment of legislative intent. *L. R. Markell et al.* v. *United States*, 16 Ct. Cust. Appls. 518, T.D. 43239; *United States* v. *Clay Adams Co., Inc.*, 20 C.C.P.A. (Customs) 285, T.D. 46078. Ordinarily, where the legislative purpose is evident from the plain meaning of the written text, and the language is neither ambiguous nor uncertain, no occasion arises to consult extrinsic data for further elucidation. *Thorens, Inc.* v. *United States*, 31 C.C.P.A. (Customs) 125, C.A.D. 261; *United States* v. *Good Neighbor Imports, Inc.*, 33 C.C.P.A. (Customs) 91, C.A.D. 321. Consideration of such material may, however, be resorted to where ambiguity in fact exists, or where not to do so would preclude the court from exercising its function of determining congressional intent. *United States* v. *Durst Mfg. Co., Inc.*, 46 C.C.P.A. (Customs) 74, C.A.D. 700.

It is our opinion that the language of paragraph 1821, *supra*, is not so clear and certain as to admit of only one interpretation. It is, therefore, appropriate to examine existing data for the light it may shed upon the intendment of the provisions.

Considering, then, the legislative history of Public Law 85–211, *supra*, which added paragraph 1821 to the Tariff Act of 1930, we find that the law was designed to implement the International Convention to Facilitate the Importation of Commercial Samples and Advertising Material, to which Convention the United States became a signatory on May 28, 1953. Upon advice and consent of the United States Senate, granted February 22, 1956, the Convention was rati-

fied by the United States on September 17, 1957, and became effective with respect to this country on October 17, 1957, 8 U.S.T. 1636.

The stated objects of the Convention were "the adoption of uniform regulations regarding the importation of samples of goods of all kinds (whether natural products or manufactured articles) and of advertising matter" to "promote the expansion of international trade."

Articles II and III of the Convention covenant read as follows:

### ARTICLE II
#### Exemption from import duties for samples of negligible value

1. Each Contracting Party shall exempt from import duties samples of goods of all kinds imported into its territory, provided such samples are of negligible value and are only to be used for soliciting orders for goods of the kind represented by the samples with a view to their importation. In determining whether samples are of negligible value, the Customs authorities of the territory of importation may consider the values of individual samples or the aggregate value of all the samples in one consignment. The values of consignments sent by a consignor to different consignees shall not be aggregated for the purpose of this paragraph even though the consignments are imported at the same time.

2. The Customs authorities of the territory of importation may require that, as a condition of their being exempted from import duties in accordance with paragraph 1 of this article, samples shall be made useless as merchandise by marking, tearing, perforation or other treatment, but not, however, so as to destroy their usefulness as samples.

### ARTICLE III
#### Temporary duty-free admission of other samples

1. For the purpose of this article, the term "samples" means articles which are representative of a particular category of goods already produced or are examples of goods the production of which is contemplated, on condition that they:

(a) are owned abroad and are imported solely for the purpose of being shown or demonstrated in the territory of importation for the soliciting of orders for goods to be supplied from abroad; and

(b) are not sold or put to normal use except for purposes of demonstration or used in any way for hire or reward while in the territory of importation; and

(c) are intended to be re-exported in due course; and

(d) are capable of identification on re-exportation;

but does not include identical articles brought in by the same individual, or sent to a single consignee, in such quantity that, taken as a whole, they no longer constitute samples under ordinary commercial usage.

Senate Report No. 852 to accompany H.R. 5924, which became Public Law 85–211, after setting forth the purpose of the bill, as hereinabove indicated, makes the following "GENERAL STATEMENT":

The United States customs treatment of imports of advertising matter and samples has not been an appreciable barrier to foreign concerns opening or maintaining sales operations in this country and the enactment of the bill will not involve important changes in the tariff treatment of the imports involved. Nevertheless, enactment of the bill is necessary to bring such tariff treatment precisely into accord with that contemplated by the Convention. United States exporting interests place considerable importance on certain foreign countries

accepting the Convention since it is believed that its provisions will facilitate the entry of samples and advertising matter into these countries from the United States.

H.R. 5924 would provide duty-free entry for import of catalogs, price lists, and trade notices relating to the sale or rental of foreign goods or services to United States residents. At present imports of such advertising material if imported in bulk for subsequent distribution to potential customers are subject to duty as books, pamphlets, or other printed or lithographed paper articles. However, imported advertising material distributed directly through the mails to potential customers is usually not subject to duty.

H.R. 5924 would provide for duty-free entry of certain samples to be used in the United States only for soliciting orders for products of foreign countries; the samples that could be so entered would be limited to ones valued at less than $1 each or samples that have been mutilated in such ways as to leave them useful only as samples and the samples of alcoholic beverages and tobacco products that would be enterable free under the bill are very closely restricted.

At present samples, regardless of value, are enterable free of duty under bond, the bonds being subject to liquidation upon exportation of the samples so entered. Samples valued at less than $1 each are also presently enterable free of duty under section 321 of the Tariff Act, a provision which authorizes collectors of customs under regulations issued by the Secretary of the Treasury to admit free of duty articles valued at not more than $1 each. For this reason enactment of H.R. 5924 would not in important degree alter the present tariff treatment of samples.

\* \* \* \* \* \* \*

Public Law 85–211, thereafter enacted, related to both categories of articles covered by the international agreement. As respects advertising matter, the law amended paragraph 1629 of the Tariff Act of 1930, by the addition of a provision for the free entry of—

(c) Any catalog, price list, or trade notice relating to offers, by a person whose principal place of business or bona fide residence is in a foreign country, to sell or rent products of a foreign country or to furnish foreign or international transportation or commercial insurance services.

We have set forth the foregoing data in somewhat lengthy detail, for we find it to be particularly illuminating, although by no means dictating the conclusion urged by the defendant. It seems clear that when it was intended that free entry was to be dependent upon foreign ownership or dominion over the article, such fact was expressly stated. The Convention specifies, in connection with the temporary admission of certain samples, that they shall be owned abroad and used after importation for the solicitation of orders *to be supplied from abroad*. In connection with advertising material, the act specifies that it must stem from persons who are *bona fide* foreign residents. In the case of samples of negligible value, neither the Convention nor the statute sets forth an ownership restriction, it being provided simply that such samples be used "only for soliciting orders for products of foreign countries."

The statute does not say that the products of foreign countries may not be advertised by samples the ownership of which has been

acquired by domestic persons. To construe it as requiring otherwise is an act, not of interpretation, but of legislation, and, hence, beyond the judicial function.

The statutory object is achieved if international trade is expanded. The statutory means for accomplishing that result is the solicitation of orders for products of foreign countries. It seems obvious that whether or not the samples are owned by A. L. Diament & Co., the wallpapers which they display are products of a foreign country. When orders are placed, they relate to specific foreign manufactures. When orders are filled, the source of supply is the foreign production. If the distribution of the instant samples results in the purchase of French manufactured wallpapers, and it cannot be otherwise, to that extent, trade between France and the United States has been stimulated.

We are of the opinion that with respect to samples of nominal value, or so treated as to have no other use than in the solicitation of orders for merchandise, the conditions of paragraph 1821, *supra*, are met, if the samples represent the goods to be ordered, and the goods have been produced in a foreign country.

The claim of the plaintiff for free entry of the subject wallpaper sample books, within the provisions of paragraph 1821, is, therefore, sustained. All other claims are, however, overruled.

Judgment will be entered accordingly.