(C.D. 2263)

ITALIAN DRUGS IMPORTING CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 5, 1961)

*Eugene R. Pickrell* (*George E. Long* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: This case has been submitted on the following stipulation:

IT IS HEREBY STIPULATED AND AGREED by and between the attorney for the plaintiff and the Assistant Attorney General of the United States that the items marked "A" and initialed JJO by Examiner J. J. O'Connor, Jr. on the invoice covered by the above protest assessed with duty at 45% ad valorem and 7¢ per lb. under the provisions of Paragraph 28 of the Tariff Act of 1930 consists of Ino B-Omnia imported from Italy.

IT IS FURTHER STIPULATED AND AGREED that said item was manufactured by Foscama Industria Farm, Italiana, Torino, Italy and shipped without charge to its sole agent in the United States, the plaintiff herein.

IT IS FURTHER STIPULATED AND AGREED that said items are marked "Sample, not for sale" and that, subject to the approval of the Court, the sample submitted herewith be received in evidence as plaintiff's Exhibit 1 as representative of the merchandise covered by the protest.

IT IS FURTHER STIPULATED AND AGREED that the plaintiff herein distributes items such as plaintiff's Exhibit 1 to physicians without charge and that the physicians in turn give the merchandise to patients without charge.

IT IS FURTHER STIPULATED AND AGREED that it is the usual and ordinary practice of the trade of the United States for manufacturers and distributors of merchandise such as plaintiff's Exhibit 1, including but not limited to certain medicinal preparations and vitamins, to distribute samples of such merchandise without charge to physicians for distribution in turn to patients. The purpose of such practice is to create a demand for such products.

IT IS FURTHER STIPULATED AND AGREED that the merchandise before the Court is imported for the purpose of soliciting orders and creating a demand for Ino B-Omnia to be manufactured and supplied by Foscama Industria Farm, Italiana, Torino, Italy to Italian Drugs Importing Co., Inc. for fullfillment [*sic*] of orders obtained as a result of the distribution of samples of said product.

IT IS FURTHER STIPULATED AND AGREED that the protest be submitted on this stipulation, the protest being limited to the items marked "A" as aforesaid.

Plaintiff waives the right to the first docket call and further amendment of this protest.

Plaintiff's only claim is that the merchandise at bar is properly free of duty as a "sample" under the provisions of paragraph 1821 of the Tariff Act of 1930, Public Law No. 85–211. If the merchandise is not such a sample, under the aforesaid paragraph of the tariff act, then the classification herein is not in dispute.

Respecting the free entry of merchandise, paragraph 1821, *supra*, of the Tariff Act of 1930, reads as follows:

PAR. 1821. (a) Except as provided in subparagraphs (b), (c), and (d), any sample to be used in the United States only for soliciting orders for products of foreign countries.

(b) Subparagraph (a) shall apply to a sample only if its value does not exceed $1, except that this limitation shall not apply to (1) any sample which is marked, torn, perforated, or otherwise treated, in such a manner that such sample is unsuitable for sale or for use otherwise than as a sample, or (2) any sample which is covered by subparagraph (c) or (d).

(c) In the case of samples of alcoholic beverages, subparagraph (a) shall apply only to samples for the use of persons importing alcoholic beverages in commercial quantities. In no case shall subparagraph (a) apply to more than one sample of each alcoholic beverage product admitted during any calendar quarter for the use of each such person. No sample of a malt beverage shall contain more than 8 ounces, no sample of wine shall contain more than 4 ounces, and no sample of any other alcoholic beverage shall contain more than 2 ounces.

(d) In the case of samples of tobacco products, and cigarette papers and tubes, subparagraph (a) shall apply only to samples for the use of persons importing any such article in commercial quantities. In no case shall subparagraph (a) apply to more than one sample of each tobacco product, cigarette paper, or cigarette tube, admitted during any calendar quarter for the use of each such person. No such sample shall contain more than (1) 3 cigars, (2) 3 cigarettes, (3) ⅛th of an ounce of tobacco, (4) ⅛th of an ounce of snuff, (5) 3 cigarette tubes, or (6) 25 cigarette papers.

(e) Any article which is exempted by this paragraph from the payment of duty shall also be exempt from the payment of any internal revenue tax imposed on or by reason of importation and from the labeling requirements of the Federal Alcohol Administration Act and chapter 52 of the Internal Revenue Code of 1954.

(f) The Secretary of the Treasury shall prescribe such regulations as may be necessary to carry out the provisions of this paragraph.

The position of the Government on the question here for determination, as stated in its brief, is as set forth in T.D. 54569, 93 Treas. Dec. 126, 127, reading, in part, as follows:

*The law does not permit importers or others in the United States to receive free of duty articles which are to be used in soliciting orders within the United States for products they have purchased or otherwise obtained from foreign manufacturers or suppliers, either on the basis of the samples referred to in the preceding paragraph or as a result of orders to or other arrangements with foreign manufacturers or suppliers which have involved no utilization of samples,* for example, when the shipments were made from abroad as a result of orders placed from catalogs, photographs, specifications, or descriptive material.

It will be noted that the samples provided for in subparagraphs (a) and (b) of paragraph 1821 may be "used in the United States only for soliciting orders."

This precludes the persons or firms in the United States who receive samples from foreign manufacturers or suppliers as a basis for placing orders with such manufacturers or suppliers for the products of foreign countries from using such samples for any other purpose. *Thus the samples may not be used for other purposes or be sold or given away within the United States; and after serving their use as samples they must be retained, reexported, or destroyed by or on behalf of the person or firm who received them from abroad as the basis for placing orders with the foreign manufacturer or supplier by whom they were sent to the United States.* [Italics supplied.]

Similarly, to the same effect is the language in T.D. 55061, advance Treasury Decisions, volume 95, No. 9, March 3, 1960.

The question as to what constitutes "samples," so as to render imported merchandise exempt from duty as such, has been previously considered by this and our appellate court. In *Badische Co.* v. *United States*, 4 Ct. Cust. Appls. 374, T.D. 33535, the merchandise, so-called samples, consisted of certain pasteboard books, folders, and cards, within, upon, or attached to which were small pieces of textile fabrics, yarns, etc., in various colors, which illustrated the coloring results produced by the use of dyes made by the foreign manufacturer. These samples were furnished by the manufacturers to the appellant therein, the sole importer of the products of the manufacturer, and were distributed among branch houses, to be used by salesmen to promote the sales of the dyes. As indicated, the items were not samples of the dyes, but were samples of the coloring results, which could be produced by using same. Each sample illustrating the results of the dye employed was identified by a certain printed number near it, and upon the same or an opposite page, identified by the same number, was printed the name or description of the dye used in coloring it and other information in regard thereto for the guidance of the purchaser of the dyes in selecting the desired shade and its treatment to produce the same in the article to be colored. The record disclosed that the importer paid nothing for the samples, nor did it sell them, but it sold the dyes on the strength of the samples which, it appears, were attractive in design and appearance. The merchandise, in the *Badische* case, *supra*, was assessed for duty as printed matter under paragraph 416 of the Tariff Act of 1909 and was claimed properly free of duty as "samples" under various Treasury departmental regulations. In its decision, the court, in the *Badische* case, *supra*, held that the items there under consideration were not the "samples" covered by the pertinent rulings and regulations of the Treasury Department, because they were not *samples of merchandise to be sold*, but were samples illustrating the results which might be produced by the merchandise to be sold, stating, in this connection, page 377, as follows:

* * * The importers at best can only claim under the *favor* of the Treasury regulations. These regulations provide that samples to be entitled to free entry must be such as "are obviously intended for use merely as samples of merchandise to sell the class of goods which they represent," which concededly these are not. [Italics quoted.]

In *Gernet* v. *United States*, 4 Ct. Cust. Appls. 387, T.D. 33834, certain fashion plates, made of surface-coated paper, to which were attached samples of embroidered or appliquéd dress goods, and on which plates was printed advertising matter exploiting the quality of the merchandise, its characteristics, and other pertinent details, used to solicit orders by direct mail, were held not entitled to free entry under Treasury regulations as samples of no commercial value, but were held properly dutiable under paragraph 411 of the Tariff Act of 1909 as printed matter on surface-coated paper. In so holding, the court, pages 388–389, stated:

The character of this merchandise, however, does not render it necessary to rest this decision upon the fact that the goods were invoiced and entered at a value, or upon the theory that the importer has mistaken his remedy in not appealing to reappraisement, but upon the salient point in the case that such merchandise as this is not "samples" within the theory of any of the Treasury or board or court decisions holding such entitled to free entry upon the theory of the "favor" entended such by the customs rulings of many years, which seem to be acquiesced in by implied congressional approval. Primarily, it may be said that the theory of these rulings is that the merchandise is of no *commercial* value. This was effected in the individual cases largely by rending or perforating or otherwise injuring the pieces of merchandise imported for the purpose of exhibiting the quality of the goods they represented.

In cases like these, however, where the importation consists not alone of a *sample,* but in conjunction therewith and as a part of the importation of which the sample constitutes but an incidental part, printed matter complete and of great commercial use, it can not be said that the merchandise is without any commercial value. Moreover, in such cases as these it can not be said that the merchandise is properly characterized as a *sample,* for, as a matter of fact, it is not alone a sample, but it is primarily and chiefly surface-coated paper printed and packed ready for shipment, which, while it is not intended for sale in this country, nevertheless enters into competition with such commercial articles produced and for sale in this country. [Italics quoted.]

The question whether certain merchandise should be considered "samples" and, accordingly, exempt from duty as such, was again before our appellate court in *Lloyd Co.* v. *United States,* 9 Ct. Cust. Appls. 280, T.D. 38217. The merchandise there consisted of sample books of wallpaper. It appeared that, after the purchase of its season's stock from the factory abroad, the appellant next ordered from the same manufacturer a large number of sample books suitable for its stock. The manufacturer did not furnish these gratuitously, but charged for them a price based upon the cost of their production. Both in this country and in the country of manufacture, such sample books were furnished without charge each season by the wholesale merchants to the retail merchants, their cost being recouped as a part of the overhead expense, and, at the close of the season, these books were destroyed. The record disclosed that, upon entry of the sample books, together with other merchandise, its invoices disclosed the cost price of the books to be in the sum of about $11,000. Our appellate

court affirmed the action of the appraiser in appraising the involved so-called sample books at the cost price given them in the invoices, thus sustaining the assessment of the collector in holding that the goods were dutiable at the relevant rate as "books" within paragraph 329 of the Tariff Act of 1913. In so holding, the court, page 284, stated:

* * * It is true also that the sample books were gratuitously distributed among the appellant's customers in this country, but this fact is nominal only since their cost necessarily entered into the overhead expenses of the appellant's business in this country, and it was, of course, recouped as such. And at all events the goods came into this country as goods which had been bought and paid for abroad. Under these circumstances it seems clear that the price which the appellant paid for the goods in England may well have been accepted by the appraiser, in the absence of any modifying facts, as the wholesale price of the goods in that market at the time.

The most recent expression by this court on the question as to what constitutes a "sample" was had in the case of *Carson M. Simon & Co.* v. *United States*, 46 Cust. Ct. 118, C.D. 2243, decided March 20, 1961. The merchandise involved therein consisted of certain wallpaper sample books, imported from France, which were classified as manufactures of paper under paragraph 1413 of the Tariff Act of 1930, as modified, and were claimed properly free of duty, by virtue of paragraph 1821 of said act, as added by Public Law 85–211 (71 Stat. 486), approved August 28, 1957. The record in the *Simon & Co.* case, *supra*, disclosed that the wallpaper books in question were imported for the account of a concern in this country engaged in the wholesaling of wallpaper, fabrics, and furniture to interior decorators. The sample books were expressly prepared for the company at a cost of $4.80 per copy, such charge being the expense of manufacture. It further appeared that these sample books were distributed, unsolicited, to decorators throughout the United States for the purpose of obtaining orders for the wallpapers of the manufacturer. Some, but not many, of the recipients remitted payment; some returned the books; and others simply retained the wallpaper books without payment.

In holding that the wallpaper sample books used to solicit orders for French wallpaper were entitled to free entry, this court, in the *Simon & Co.* case, *supra*, stated that the provisions of paragraph 1821(a) of the Tariff Act of 1930, as added by Public Law 85–211, according free entry to samples of negligible value or which have been so treated as to have no other use than in the solicitation of orders for products of foreign countries, are met if the samples represent the goods to be ordered and the goods have been produced in a foreign country, and held that there is no statutory requirement of foreign ownership of the samples, nor did the legislative background of the added provision reveal a congressional intent to so limit the terms of the pertinent provisions.

This court, in the *Simon & Co.* case, *supra*, thoroughly discussed the legislative history of Public Law 85–211, *supra*, finding that the law was designed to implement "the International Convention to Facilitate the Importation of Commercial Samples and Advertising Material," the stated objects of the Convention being "the adoption of uniform regulations regarding the importation of samples of goods of all kinds * * * and of advertising matter" to "promote the expansion of international trade." The latter factor, in our opinion, is important and relevant in our present determination.

What we have in the case at bar is, in effect, a chain of solicitation. In other words, the samples in question are transmitted by the foreign manufacturer to its agent in this country, which distributes them to physicians who, in turn, distribute the samples to their patients. If the contents of these sample vitamins prove satisfactory or effective, there is thus created a demand for the vitamins, so that druggists and drug houses will order and stock them. Under such circumstances, it must be held, in our opinion, that these vitamin samples are employed and used for one purpose and one purpose only, namely, for the purpose of soliciting orders. Certainly, the samples, in and of themselves, even though possibly temporarily beneficial, would prove of no lasting salutary value to the patient. The end result, therefore, predicated on future orders for these samples, is the production and sale of merchandise by the foreign manufacturer, a purpose within the intent of the enactment of Public Law No. 85–211, *supra*, namely, the promotion of international trade.

Unlike other types of samples, such as those in the *Simon & Co.* case, *supra*, samples such as those at bar, by their very nature, could not merely be used for show purposes, but their contents had to be consumed in order to determine whether or not they were of such worth or character as to warrant their purchase. The only way a physician could test the effectiveness of these vitamin samples would be to dispense them to a patient, in this case free of charge. In such a situation, the physician would be in a comparable position to that of the seller of the wallpaper books in the *Simon & Co.* case, *supra*. If the vitamins in question were found efficacious after distribution by the physician, the result would be that orders would be placed for their purchase, a circumstance bringing these vitamin samples within the applicable provisions of Public Law No. 85–211.

For all of the reasons stated aforesaid, we hold the merchandise here in question properly free of duty under paragraph 1821 of the Tariff Act of 1930, Public Law No. 85–211, under the provisions therein for samples "to be used in the United States only for soliciting orders for products of foreign countries," as claimed. The protest claim in this respect is sustained. In all other respects and as to all other merchandise, the protest is overruled.

Judgment will be entered accordingly.