(C.D. 2354)

Auto Imports, Inc. *v.* United States

United States Customs Court, Second Division

(Decided July 16, 1962)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiff.

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: The two protests here involved, which have been consolidated for purposes of trial, relate to certain publicity material, which was assessed with duty at the rate of 15 cents per pound, pursuant to the provisions of paragraph 1406 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for articles lithographically printed or at the rate of 10 per centum ad valorem, pursuant to the provisions of paragraph 1410 of said act, as so modified, for printed pamphlets.

That the instant merchandise, in fact, consists of lithographed or printed matter, within the intendment of said paragraphs 1406 and 1410, as modified, *supra*, is not disputed by the plaintiff. It is contended, however, that the material is properly entitled to free entry within the provisions of paragraph 1629(c) of said act, as added by Public Law 85–211, 92 Treas. Dec. 281, T.D. 54463, which reads as follows:

Any catalog, price list, or trade notice relating to offers, by a person whose principal place of business or bona fide residence is in a foreign country, to sell or rent products of a foreign country or to furnish foreign or international transportation or commercial insurance services.

It appears from the record that the plaintiff is an importer and distributor of automobiles and parts, manufactured by the A. B. Volvo Co. of Gothenburg, Sweden. In connection therewith, it also imports certain promotional material which it distributes to its dealers who are located in the 11 Western States, Alaska, and Hawaii, for the purpose of stimulating the dealers' sales to their customers. It is this promotional material which forms the subject of the instant controversy.

As identified by plaintiff's traffic manager, the items consist of postcards, containing pictures of model PV 544 and model 122 S, plaintiff's collective exhibit 1; an illustrated brochure, describing model PV 544, its special features and specifications, plaintiff's exhibit 2; leaflets, showing photographs and specifications of model PV 544, plaintiff's collective exhibit 3; a folder, explaining the rust-protecting processes applied to the Volvo PV 544, plaintiff's exhibit 4; a brochure on model 122 S, complete with pictures and printed matter descriptive of its features and specifications, plaintiff's exhibit 5; individual sheets of a parts catalog, plaintiff's collective exhibit 6; and a parts catalog, plaintiff's exhibit 7.

No prices are set forth in any of the exhibits. One of the witnesses for the plaintiff explained that prices are established by the factory in Sweden through its American representative and that they are uniform throughout the United States.

It further appears that it is necessary for each dealer to have a parts catalog, so that he will know what parts must be ordered for specific

repairs. Parts are stocked by the plaintiff in its warehouse and furnished to the dealers on order. In the event that certain parts are not on hand, they are ordered by plaintiff from the factory in Sweden and flown to the United States.

While the record shows that the cars, parts, and accessories, as well as the promotional material, imported by plaintiff, are all of Swedish origin, it also establishes that the plaintiff is an independent corporation, not affiliated with the American factory representative nor any other American distributor of Volvo automobiles, parts, or accessories. It is further reasonably inferable that no privity exists between the Swedish factory and the plaintiff, although plaintiff's exact status with respect to the manufacturer is not defined. In any event, the proof tends to reveal that the involved promotional material is designed to stimulate sales of automobiles and parts owned by plaintiff, and distributed through its dealers.

The question, therefore, arises whether such material relates to "offers, by a person whose principal place of business or bona fide residence is in a foreign country, to sell * * * products of a foreign country * * *," within the contemplation of paragraph 1629(c). *supra.*

Assuming, without deciding, that all of the publicity here involved relates to offers to sell products having their origin in a foreign country, is it so intimately connected with a person whose principal place of business or *bona fide* residence is in a foreign country as to be embraced by the provisions of paragraph 1629(c), *supra?*

Seemingly ignoring the residence requirement of the statute, counsel for plaintiff urges that "The catalogues, price lists and trade notices at bar, imported for the specific purpose of stimulating sales of Swedish Volvo Autos and parts and thus expanding international trade, fall squarely within the scope of par. 1629(c), *supra,* of the Tariff Act of 1930, added to the Tariff Act by Public Law 85-211." Counsel's argument derives from the fact that the language of the provision is ambiguous, and resort to aids to construction being, therefore, appropriate, the history of the provision demonstrates an intent on the part of Congress to allow free entry for "*advertising material imported in bulk for subsequent distribution to potential customers in the United States.*" [Italics quoted.]

Counsel for defendant stresses the foreign residence requirement as precluding free entry of the instant merchandise and further contends that the subject material does not relate to *offers* to sell foreign products.

Insofar as the language of paragraph 1629(c) is concerned, this is a case of first impression. Related portions of Public Law 85-211, by virtue of which said paragraph was added to the Tariff Act of 1930, but bearing upon the matter of the free admission of certain imported

samples, were, however, the subject of consideration by this court in the recent cases of *Carson M. Simon & Co.* v. *United States*, 46 Cust. Ct. 118, C.D. 2243, and *Italian Drugs Importing Co., Inc.* v. *United States*, 46 Cust. Ct. 243, C.D. 2263.

The *Simon* case, *supra*, involved an interpretation of that portion of Public Law 85–211 which added a new paragraph 1821(a) to the Tariff Act of 1930, providing in part for the free entry of "any sample to be used in the United States only for soliciting orders for products of foreign countries." The merchandise in controversy was wallpaper sample books, imported by an American wholesaler and distributed to its customers for the purpose of obtaining orders for the French and Italian wallpapers exhibited in the sample books.

We there expressed the view that the language of said paragraph 1821(a) was sufficiently ambiguous to support an examination of extraneous data to assist in the ascertainment of legislative intent. Accordingly, we stated:

Considering then, the legislative history of Public Law 85–211, *supra*, which added paragraph 1821 to the Tariff Act of 1930, we find that the law was designed to implement the International Convention to Facilitate the Importation of Commercial Samples and Advertising Material, to which Convention the United States became a signatory on May 28, 1953. Upon advice and consent of the United States Senate, granted February 22, 1956, the Convention was ratified by the United States on September 16, 1957, and became effective with respect to this country on October 17, 1957, 8 U.S.T. 1636.

The stated objects of the Convention were "the adoption of uniform regulations regarding the importation of samples of goods of all kinds (whether natural products or manufactured articles) and of advertising matter" to "promote the expansion of international trade."

After considering Articles II and III of the Convention covenant, and Senate Report No. 852 to accompany H.R. 5924, which became Public Law 85–211, we held that if the samples were to be used in this country for the solicitation of orders for products to be supplied from abroad, they were embraced by the statute, regardless of whether or not ownership of the samples had been acquired by domestic persons. This conclusion was supported in part by the fact that both the Convention and the statute made provision for foreign residence in the case of advertising material, whereas, in connection with samples, no similar limitation was imposed.

The principle of the *Simon* decision was adopted in *Italian Drugs Importing Co., Inc.* v. *United States*, *supra*, to allow free entry of medicinal samples distributed in the United States for the purpose of soliciting orders for a medicinal manufactured in Italy and, hence, serving to promote international trade.

Further reference to the International Convention to Facilitate the Importation of Commercial Samples and Advertising Material,

*supra*, discloses that the contracting parties intended to use the term "persons" as embracing both natural individuals and legal entities, and that the subject of advertising materials was covered by Article IV thereof, which reads in part as follows:

*Duty-free admission of advertising material*

1. Each Contracting Party shall exempt from import duties catalogues, price lists and trade notices relating to

    (a)   goods offered for sale or hire, or

    (b)   transport or commercial insurance services offered,

by a person established in the territory of another Contracting Party, when such documents are imported from the territory of any Contracting Party, provided that * * *

\*      \*      \*      \*      \*      \*      \*

Senate Report No. 852 to accompany H.R. 5924 contains the following comments about advertising matter:

The United States customs treatment of imports of advertising matter and samples has not been an appreciable barrier *to foreign concerns opening or maintaining sales operations in this country* and the enactment of the bill will not involve important changes in the tariff treatment of the imports involved. Nevertheless, enactment of the bill is necessary to bring such tariff treatment precisely into accord with that contemplated by the Convention. United States exporting interests place considerable importance on certain foreign countries accepting the Convention since it is believed that its provisions will facilitate the entry of samples and advertising matter into these countries from the United States. [Italics supplied.]

H.R. 5924 would provide duty-free entry for import of catalogs, price lists, and trade notices relating to the sale or rental of foreign goods or services to United States residents. At present imports of such advertising material if imported in bulk for subsequent distribution to potential customers are subject to duty as books, pamphlets, or other printed or lithographed paper articles. However, imported advertising material distributed directly through the mails to potential customers is usually not subject to duty.

\*      \*      \*      \*      \*      \*      \*

As we construe paragraph 1629(c) against the background of the International Treaty and the statement of congressional purpose, we are inclined to adhere to the dictum of the *Simon* case, *supra*, that the advertising material must stem from persons whose principal place of business or *bona fide* residence is in a foreign country. That is to say, to be entitled to free entry, such material must relate to offers made by foreign residents directly to their potential customers in the United States. Under the circumstance that the language of the provision specifies a foreign place of business or residence, it cannot have as broad a connotation as that portion of Public Law 95–211 relating to samples of negligible value. It is not enough that the ultimate effect of the promotional material is to stimulate international trade. The plain intendment of the specific phrase concerning foreign

residence is that the advertising matter must pertain directly to transactions between the foreign seller and the American purchaser. When the chain of transactions is extended by the interposition of an American buyer, to whom the trade notices are distributed by an American seller, and who, therefore, is not induced to purchase from the foreign seller, the primary purpose of the material being to bolster sales by an American importer to his domestic customers, the objectives of the statute to broaden the American contacts of the foreign producer are not achieved.

Any other interpretation, it seems to us, must read out of the provision the very explicit language which relates the offers of sale to persons "whose principal place of business or bona fide residence is in a foreign country." Yet, we are constrained to avoid such a result by the fundamental rule of construction which requires that all parts of a statute be given effect, if it is possible to do so, and by the further precept that we may not ascribe to the Congress the use of superfluous, unnecessary, or meaningless phraseology.

Since the instant record tends to support a finding that plaintiff is neither a subsidiary nor an agent of the exporter and that the advertising circulars do not relate to offers of sale by the exporter, but, on the contrary, are designed to promote American dealers' sales, the merchandise at bar is not embraced within the scope of the provisions of paragraph 1629 (c), *supra*. The claim for free entry thereof is, therefore, denied.

Judgment will be entered accordingly.