BEFORE THE SECOND DIVISION, APRIL 22, 1965

No. 69261.—Doulton & Co., Inc. v. United States, protest 62/9048 (New York).

RAO, Judge: Certain imported printed matter was assessed with duty at the rate of 5 per centum ad valorem, by virtue of the provision in paragraph 1410 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for printed matter of *bona fide* authorship.

Plaintiff does not dispute the inherent character of the instant merchandise as printed matter of *bona fide* foreign authorship. It is contended, however, that said merchandise consists of advertising material, which is entitled to free entry by virtue of the provisions of paragraph 1629(c) of the Tariff Act of 1930, as added by Public Law 85–211, 92 Treas. Dec. 281, T.D. 54463.

The language of the provisions in controversy reads as follows:

Paragraph 1410 of the Tariff Act of 1930, as modified, *supra*—

Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for:
   If of bona fide foreign authorship:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

   Other (except diaries) _____ 5% ad val.

Paragraph 1629(c) of the Tariff Act of 1930, as added, *supra*—

Any catalog, price list, or trade notice relating to offers, by a person whose principal place of business or bona fide residence is in a foreign country, to sell or rent products of a foreign country or to furnish foreign or international transportation or commercial insurance services.

The material in issue in this case is described on the invoices covered by this protest as "Envelope Enclosures 'Coronet'" or other pattern; "Brochures, English Translucent China"; "Collectors' Figure Books No. 7." They are identified by samples introduced in evidence as plaintiff's collective exhibit 1, plaintiff's exhibit 2, and plaintiff's illustrative exhibit 3, respectively. Evidence concerning

the importation and use of this material was provided by the sole witness in the case, Mr. Hugh F. Hinckley, who testified that he is vice president, treasurer, secretary, and also director of Doulton & Co., Inc., New York City. According to this witness, his firm is a wholly owned subsidiary of Doulton & Co. of England, a manufacturer of a variety of chinaware and artware products which the New York company imports for sale in the United States.

Mr. Hinckley stated that the printed material in issue, which is wholly prepared in England except that the prices are added in this country, is imported to foster the sale of Doulton-ware products in the United States. It is offered directly to consumers through national advertising and is also sold or given to dealers through whom the products of Doulton & Co. are marketed in this country. Doulton of New York does not sell its merchandise directly to the consumer. It operates through independent dealers, generally filling orders from the supply on hand in the United States. The advertising material is designed "to attract the dealer to become interested in the line, and thereby to attract the consumer." In the last analysis, it must, however, reach the consumer so as to prompt him to purchase from the dealer.

This court had occasion to examine the scope and effect of the phraseology of paragraph 1629(c), *supra*, in the light of its legislative history and the interpretation of related provisions, in the case of *Auto Imports, Inc.* v. *United States*, 49 Cust. Ct. 14, C.D. 2354. We were there concerned with an importation of advertising matter promoting the sale and distribution of the Volvo automobile, manufactured by the A. B. Volvo Co. of Gothenburg, Sweden. The plaintiff, in the case, was a distributor of the Volvo automobiles and parts, apparently not affiliated with the Swedish factory nor with the American factory representative thereof. The material imported was distributed by the plaintiff to its dealers for the purpose of promoting the dealers' sales to their customers.

Several factors tended to support our conclusion that the publicity material involved in the case was not entitled to free entry under the language of said paragraph 1629(c). We found, in the inclusion in said provision of the clause "whose principal place of business or bona fide residence is in a foreign country," an intent upon the part of the legislature to restrict the scope of the provision to offers made by foreign residents directly to their potential customers in the United States. Our determination to this effect was prompted, in part, by a comparison of the language of the provision with respect to advertising material with the language embraced in Public Law 85–211, *supra*, relating to the importation of commercial samples wherein no foreign residence requirement was specified; with the terms of the International Convention to Facilitate the Importation of Commercial Samples and Advertising Material (8 U.S.T. 1636), which served as the basis of the enactment of Public Law 85–211; with Senate Report No. 852 to accompany H.R. 5924 (Public Law 85–211); and with the conclusions in the cases of *Carson M. Simon & Co.* v. *United States*, 46 Cust. Ct. 118, C.D. 2243, and *Italian Drugs Importing Co., Inc.* v. *United States*, 46 Cust. Ct. 243, C.D. 2263, concerning the importation of commercial samples.

One of the factors which tended to convince this court that the advertising material involved in the *Auto Imports* case did not relate to offers by a person having his principal place of business in a foreign country was that there was no evidence of any relationship between the exporter and the importer, and it appeared that the advertising material directly stimulated not the business of the exporter, but the business of the importer.

It is this circumstance upon which counsel for the plaintiff places heavy stress in the instant case, since the record herein plainly shows that the importer was the subsidiary of the exporter, and, hence, privy to its transactions. The infer-

ence is drawn that, in view of the existing relationship between these parties, it must follow that the advertising material here in issue relates to offers of sale by a *bona fide* foreign resident.

The difficulty with this posture lies in the fact that the solicitation of this advertising material extends not to the independent dealers to whom the merchandise of the manufacturer is being sold, but to customers of the dealers. Its eventual purpose is to create consumer demand, not dealer demand. It is designed to stimulate the consumer's interest in buying, and its effect upon sales by the manufacturer must necessarily be channeled through the dealer, since no sales to the consumer are made by Doulton of New York. We do not consider it of any great significance, in the circumstances of this case, that the importer is the subsidiary of the exporter, since the material which is disseminated does not relate to offers of sale stemming directly from the exporter or its subsidiary. As we stated in the *Auto Imports* case, *supra*—

As we construe paragraph 1629(c) against the background of the International Treaty and the statement of congressional purpose, we are inclined to adhere to the dictum of the *Simon* case, *supra*, that the advertising material must stem from persons whose principal place of business or *bona fide* residence is in a foreign country. That is to say, to be entitled to free entry, such material must relate to offers made by foreign residents directly to their potential customers in the United States. Under the circumstance that the language of the provision specifies a foreign place of business or residence, it cannot have as broad a connotation as that portion of Public Law 95–211 relating to samples of negligible value. It is not enough that the ultimate effect of the promotional material is to stimulate international trade. The plain intendment of the specific phrase concerning foreign residence is that the advertising matter must pertain directly to transactions between the foreign seller and the American purchaser. When the chain of transactions is extended by the interposition of an American buyer, to whom the trade notices are distributed by an American seller, and who, therefore, is not induced to purchase from the foreign seller, the primary purpose of the material being to bolster sales by an American importer to his domestic customers, the objectives of the statute to broaden the American contacts of the foreign producer are not achieved.

In our opinion, the advertising material here involved is not so phrased as to affect offers of sale made by a foreign resident directly to his potential customers. On the contrary, it is calculated to stimulate the business of the American dealer in Doulton-ware and only indirectly can it be said to enhance the business of the manufacturer.

The court is constrained to hold that the subject advertising material does not relate to offers of sale by the exporter within the contemplation of paragraph 1629(c), *supra*. The claim for free entry thereof is, therefore, denied.

Judgment will be entered accordingly.