(C.D. 4204)

TOYOTA MOTOR SALES, INC. *v.* UNITED STATES

275

United States Customs Court, First Division

(Decided April 21, 1971)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: In these three protests, consolidated for purposes of trial, plaintiff seeks to recover all or a portion of the customs duties paid upon certain merchandise imported from Japan. The merchandise is described on the invoices as "catalogs", "parts catalogs", or "parts catalogs and manuals".

In protest 67/8309, the catalogs and their metal binders were classified separately. The catalogs, invoiced as "Toyota parts catalogs", were classified under item 273.40 of the Tariff Schedules of the United States as "charts, other", and were assessed with duty at the rate of 8.5 per centum ad valorem. The metal binders were assessed with duty at the rate of 19 per centum ad valorem as other articles of iron or steel under item 657.20 of the Tariff Schedules of the United States.

In protest 67/60014, the merchandise consist of catalogs similar to those in protest 67/8309, but which contained no metal binders. The catalogs, invoiced as "parts catalogs and manuals", were classified under item 273.40 of the Tariff Schedules of the United States as "charts, other", with duty at the rate of 8.5 per centum ad valorem.

In protest 66/63849, the merchandise, invoiced as "catalogs", consists of catalogs and binders which were classified together as a unit. The merchandise was assessed with duty at the rate of 4 per centum ad valorem under the provisions of item 274.85 of the tariff schedules, as other printed matter, not specially provided for, susceptible of authorship. From the record it appears that the catalogs in this protest are the same as those designated as RK 41 item 93351–64 on invoice number 15123 in protest 67/8309 wherein all the catalogs were classified separately from the binders with which they were imported.

Plaintiff has protested the classification and has made claims in the alternative. Plaintiff's first claim is that the merchandise in all three

protests is legally entitled to entry free of duty under item 270.85 of the tariff schedules, as printed catalogs relating to offers by a person whose principal place of business or bona fide residence is in a foreign country, to sell products of a foreign country.

Plaintiff's alternative claim applies only to the merchandise in protests 67/8309 and 67/60014, this claim not having been included in protest 66/63849. In protests 67/8309 and 67/60014, plaintiff claims alternatively that the catalogs are more specifically provided for in item 270.45 of the tariff schedules, as books not specially provided for, essentially of textual matter, and wholly or almost wholly of foreign authorship. It is, therefore, claimed that they are dutiable at the rate of 3 per centum ad valorem.

The additional claim made by plaintiff applies to the binders in protest 67/8309 which were separately classified under item 657.20 of the tariff schedules. As for these binders, plaintiff claims that they are classifiable as entireties with the catalog pages, either under item 270.85 or item 270.45 of the tariff schedules.

The pertinent provisions of the Tariff Schedules of the United States, for purposes of convenience, may be set forth as follows:

*Classified under:*

"Printed maps, globes, atlases, and charts (except tourist literature provided for in item 270.70):

 \* \* \* \* \* \* \*

 Others:

 \* \* \* \* \* \* \*

273.40 Printed not over 20 years at time of importation _____ 8.5% ad val."

"Printed matter not specially provided for:
Printed on paper in whole or in part by a lithograhic process:

 \* \* \* \* \* \* \*

 Other:

274.85 Susceptible of authorship\_\_\_\_ 4% ad val."

"Articles of iron or steel, not coated or plated with precious metal:

 \* \* \* \* \* \* \*

 Other articles:

 \* \* \* \* \* \* \*

657.20 Other _____ 19% ad val."

*Claimed under:*

"Books not specially provided for, consisting essentially of textual matter:
270.45 Wholly or almost wholly of foreign authorship _____ 3% ad val."

"270.85 Printed catalogs, price lists, or trade no-
 tices, relating to offers, by a person
 whose principal place of business or
 bona fide residence is in a foreign coun-
 try, to sell or rent products of a foreign
 country or to furnish foreign or inter-
 national transportation or commercial
 insurance services_____ Free"

The record in this case reveals that the plaintiff, Toyota Motor Sales, Inc., of Torrance, California, is the importer of Toyota autmobiles which are imported from Toyota Motor Sales of Nagoya, Japan. The only witness called at the trial was a Mr. Tatsuo Hashiguchi who is the inventory control supervisor for the plaintiff. Through this witness plaintiff introduced seven exhibits consisting of nine catalogs and manuals alleged to be samples of the various imported parts catalogs. An examination of these catalogs will show that each pertains to a different model Toyota automobile. Each of the catalogs, on the left-hand side of each page, contains charts of various portions of an automobile with letters noting each of the many parts of the particular portion of the automobile depicted on that page. The right-hand side of the page discloses the part number and nomenclature of the various parts shown on the chart. None of the catalogs disclose any prices for any of the parts depicted on the charts, nor is there any indication that the items or parts depicted are for sale or from whom they may be ordered or purchased.

Mr. Hashiguchi testified that the business of the plaintiff is the importation of Toyota automobiles from Japan. He testified that all of the exhibits consist of catalogs of parts for Toyota motor vehicles and that he is familiar with them because he uses them daily to order parts from Japan. The catalogs are supplied to Toyota dealers by the plaintiff. The first copy is supplied free of charge, but a charge is made for any additional copy. Plaintiff sells one of the catalogs "once in a while". The witness testified that the dealers use the catalogs to "order Toyota parts from [the] distributor", the plaintiff herein, and the distributor uses the catalogs to "order parts from Japan". As for the metal binders, the witness did not know whether they had any use other than with the catalogs inside them. He also testified that the Toyota manufacturer in Japan could sell its vehicles and Japanese-made parts without the use of the catalogs.

In cross-examination, Mr. Hashiguchi testified that the catalogs were only distributed to franchised Toyota dealers. When asked if they were distributed to mechanics, he replied that "[t]hat's up to the dealer." Since the dealer only received one catalog free, the witness was asked "[w]hat happens when he needs more for his mechanics?" The witness replied that "[t]hen he will order and we will charge them."

It was agreed at the trial that none of the catalogs contain a price list. In cross-examination the witness stated that in order to know the price or cost of any of the parts depicted in the catalogs one would have to "look at the price book to find out the price." He responded "Yes" to the question: "These documents, Exhibits 1 through 7, do not offer the merchandise at any price, is that correct?"

Since plaintiff claims that the merchandise is entitled to free entry under item 270.85 of the tariff schedules, the first question presented is whether plaintiff has successfully established that it consists of "printed catalogs, * * * relating to offers by a person whose principal place of business or bona fide residence is in a foreign country, to sell or rent products of a foreign country * * *"?

An examination of the catalogs in evidence, and exhibit 1, in particular, has led the court to agree with the statement of the defendant that:

> "* * * the catalogs and manuals at bar only serve as a reference work for automobile mechanics in locating and correcting defects in an automobile or for effecting repairs." (Defendant's brief, p. 7)

This view or characterization of the merchandise is further substantiated by a reference to pages 405 through 417 of plaintiff's exhibit 1 which are devoted to a description of the various tools, including special tools, which are used only by automobile mechanics.

From the testimony of plaintiff's witness and an examination of the merchandise it would seem clear that the parts "catalogs" and "manuals" at bar are distributed and used solely for the identification of the many parts of the particular vehicle, their nomenclature and precise position or location in the assembly of the automobile. There is absolutely no reference to price or terms of sale, for any of the many parts or tools depicted. Plaintiff's witness testified unequivocally that in order to ascertain the price of any automobile part depicted one would have to consult a separate price list. Indeed, the witness' testimony is equally categorical that plaintiff's exhibits do not offer merchandise at any price. Under these circumstances it is untenable to maintain that the catalogs either contain or refer to any offers, or offer to sell anything, be it parts, tools or automobiles. Upon this record, therefore, it can not be said that the merchandise consists of catalogs "relating to offers * * *" within the language of item 270.85 of the tariff schedules.

The claim for free entry of the merchandise under item 270.85 must also fail because, on the record presented, it is clear that the catalogs are distributed by the plaintiff-importer to dealers of Toyota automobiles. The dealers, in turn, purchase the parts from the plaintiff-

importer. Under pertinent judicial authority these facts preclude classification under item 270.85 for plaintiff's place of business or bona fide residence is in Torrance, California and not "in a foreign country" as required by the claimed tariff provision. Consequently, even if it were possible to find that the catalogs related to offers to sell products of a foreign country, the court could not find that they related "to offers, by a person whose principal place of business or bona fide residence is in a foreign country".

Although this case appears to be the first to raise the question of the scope and applicability of item 270.85, this court has had occasion to consider its predecessor provision, subsection (c) of paragraph 1629 of the Tariff Act of 1930, as amended by Public Law 85–211 (71 Stat. 486). Two cases that have considered paragraph 1629(c), as amended, are *Auto Imports, Inc.* v. *United States*, 49 Cust. Ct. 14, C.D. 2354 (1962), and *Doulton & Co., Inc.* v. *United States*, 54 Cust. Ct. 408, Abs. 69261 (1965), *aff'd* 54 CCPA 30, C.A.D. 899 (1967). While these cases relied, in part, upon cases which construed other portions of Public Law 85–211, which provided for the free entry of certain samples, there can be no doubt that their holdings and rationale are most pertinent as to the meaning and scope of item 270.85.

In the *Auto Imports, Inc.* case the plaintiff was the importer and distributor of automobiles and parts manufactured by the A. B. Volvo Co. of Gothenburg, Sweden. In connection therewith it also imported and distributed certain promotional material which it distributed to its dealers. Although the decision states that "this promotional material" "forms the subject" of the controversy, it is to be noted that one of plaintiff's exhibits in that case included individual sheets of a parts catalog and another exhibit consisted of a parts catalog. In the *Auto Imports, Inc.* case, as in the case at bar, no prices were set forth in any of the exhibits. The *Auto Imports, Inc.* case contains the statement that "[i]t further appears that it is necessary for each dealer to have a parts catalog, so that he will know what parts must be ordered for specific repairs. Parts are stocked by the plaintiff in its warehouse and furnished to the dealers on order. In the event that certain parts are not on hand, they are ordered by plaintiff from the factory in Sweden and flown to the United States." 49 Cust. Ct. at 15–16.

The court in the *Auto Imports, Inc.* case, stated that the question presented was "whether such material relates to 'offers, by a person whose principal place of business or bona fide residence is in a foreign country, to sell * * * products of a foreign country * * *,' within the contemplation of paragraph 1629(c) * * *." *Id.* at 16.

In holding that the merchandise was not embraced within the scope of the provisions of paragraph 1629(c), since it did not "relate to

offers of sale by the exporter, but, on the contrary, [was] designed to promote American dealers' sales", the court stated:

"As we construe paragraph 1629 (c) against the background of the International Treaty and the statement of congressional purpose, we are inclined to adhere to the dictum of the *Simon* case, *supra* [*Carson M. Simon & Co.* v. *United States*, 46 Cust. Ct. 118, C.D. 2243 (1961)], that the advertising material must stem from persons whose principal place of business or *bona fide* residence is in a foreign country. That is to say, to be entitled to free entry, such material must relate to offers made by foreign residents directly to their potential customers in the United States. Under the circumstance that the language of the provision specifies a foreign place of business or residence, it cannot have as broad a connotation as that portion of Public Law [85–211] relating to samples of negligible value. It is not enough that the ultimate effect of the promotional material is to stimulate international trade. The plain intendment of the specific phrase concerning foreign residence is that the advertising matter must pertain directly to transactions between the foreign seller and the American purchaser. When the chain of transactions is extended by the interposition of an American buyer, to whom the trade notices are distributed by an American seller, and who, therefore, is not induced to purchase from the foreign seller, the primary purpose of the material being to bolster sales by an American importer to his domestic customers, the objectives of the statute to broaden the American contacts of the foreign producer are not achieved." 49 Cust. Ct. at 18–19.

The statements of this court in the *Auto Imports, Inc.* case are particularly applicable to the case at bar. The plaintiff here, as in the *Auto Imports, Inc.* case would seem to ignore "the residence requirement of the statute." 49 Cust. Ct. at 16. The import of the words "whose principal place of business or bona fide residence is in a foreign country" can not be minimized. As stated in the *Auto Imports, Inc.* case, not only is it a fundamental rule of statutory construction that all parts of a statute are to be given effect, but it is also clear that the court "may not ascribe to the Congress the use of superfluous, unnecessary, or meaningless phraseology." 49 Cust. Ct. at 19.

The reasoning of the court in the *Auto Imports, Inc.* case was repeated in the *Doulton & Co.* case. Upon the present record plaintiff can not succeed in its efforts to distinguish those cases from the case at bar. Surely plaintiff is mistaken when it asserts in its brief that the reasoning and statutory construction of the predecessor of Item 270.85, TSUS, found in those cases requires the conclusion" that the merchandise in the case at bar is entitled to entry free of duty under that tariff provision.

On the claim for free entry, therefore, it is the determination of the court that plaintiff has not succeeded in establishing that the imported

catalogs or manuals relate to offers to sell products of a foreign country by a person whose principal place of business or bona fide residence is in a foreign country. The claim for classification of the merchandise under item 270.85 of the tariff schedules is therefore overruled.

One of plaintiff's alternative claims requires that the court determine whether the merchandise in protests 67/8309 and 67/60014 consists of books not specially provided for, essentially of textual matter wholly or almost wholly of foreign authorship. This claim is predicated upon the applicability of item 270.45 of the tariff schedules. Apart from certain statements of counsel in its brief which have no evidentiary value, there is no evidence in the record which would permit such a finding. First, counsel declares in its brief that an "examination of the exhibits establishes that they are not pictorial, and must consequently have been determined to be textual in character." Not only is the assertion unfounded, but an examination of the catalogs, to the contrary, will show that they do consist of pictorial matter. They consist essentially of charts or diagrams which depict the location in a particular automobile of any part or assembly of parts. Consequently, it is not at all apparent that the catalogs consist essentially of textual matter.

Even apart from the difficulty just mentioned, the claim under item 270.45 must fail for there is not one word in the record that would permit a finding that the catalogs are "wholly or almost wholly of foreign authorship". Once again plaintiff would remedy a defect of proof by assertions of counsel or assumption. Without reference to any evidence of record plaintiff asserts in its brief that "[t]he manufacturer and supplier of the parts described and listed in the catalogs would obviously be the only person who could author these catalogs." Why this is "obvious" does not appear of record. It is not obvious to the court. The general information, nomenclature, index explanations, the index and indeed whatever text matter that appear are all in English. It would seem clear that proof is required to establish the fact, if it be the fact, that the catalogs were of "foreign authorship."

Citation of authorities is hardly necessary for the fundamental proposition that factual assertions of counsel contained in a brief, on matters requiring proof, have no evidentiary value. Surely no finding could be predicated on such statements totally unsupported by any evidence of record. Plaintiff has consequently failed to establish the merit of its alternative claim as to protests 67/8309 and 67/60014.

Plaintiff's alternative claim as to the classification of the metal binders in protest 67/8309 requires that the court determine whether plaintiff has successfully established that they were dutiable as entireties with the parts catalogs with which they were imported. At the trial plaintiff's witness was asked whether he knew if the binders had

any other use than with the catalogs. His terse and clear reply was that he did not know. Plaintiff, in its brief, admits that there is no evidence in the record to establish that the binders are used only with the catalogs, but asserts: "While there is no evidence in the record indicating that the metal binders are used only with the catalog imported inside them (R. 14–15), it is believed sufficiently obvious that that is their only actual commercial utilization." (Plaintiff's brief, p. 13)

The plaintiff cites *Miniature Fashions, Inc.* v. *United States*, 54 CCPA 11, C.A.D. 894 (1966), a case dealing with "cabana sets", described as "two-piece shirt-short sets", and asserts that "[a]ny other use would be imaginative and fugitive, not barring their classification for customs purposes as entireties, * * *." Plaintiff can derive no support from the *Miniature Fashions, Inc.* case for a reading of that decision will show that the factual findings there were supported by "the evidence of record consisting of testimony and exhibits". 54 CCPA at 13. As stated by the court in that case, the "appellant has shown, by clear and convincing evidence, that the imported articles are entireties for classification purposes." 54 CCPA at 18. No such statement can be made in the present case.

Plaintiff's factual assertions with respect to the binders are conclusory and speculative and are devoid of any evidentiary support. Neither does an examination of the exhibits make any of the asserted facts "obvious". Since no finding can be made on the present record that the binders are used only with the catalogs imported in protest 67/8309, plaintiff has failed to establish that they should be classified as entireties with the catalogs with which imported.

The court has noted that the catalogs in protest 67/8309, designated as RK 41 item 93351–64 on invoice number 15123, appear to be similar to the catalogs which, in protest 66/63849, were classified with their binders as entireties under item 274.85 of the tariff schedules, dutiable at the rate of 4 per centum ad valorem. Plaintiff, however, in protest 67/8309 does not claim classification under item 274.85 of the tariff schedules. Rather, it claims classification under either item 270.85 or item 270.45 of the tariff schedules.

Since in the case at bar plaintiff has not established that any of its claimed classifications are correct, it can not be said that it has borne its dual burden of proof that is fundamental in a customs classification case. In the words of the Court of Customs and Patent Appeals in the recent case of *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004 (1970), "[i]t has long been settled law that the importer's burden does not merely go to producing sufficient evidence to support a conclusion that the original classification was

wrong. Regardless of the actual correctness of that classification, the orderly administration of customs law requires that it must stand unless and until the importer submits substantial evidence establishing the propriety of an asserted alternative classification." 58 CCPA at 58. No "substantial evidence establishing the propriety of an asserted alternative classification", can be found in the record before the court in this case. Under the standard prescribed by the Court of Customs and Patent Appeals in the *New York Merchandise Co.* case, this court may rule on behalf of the plaintiff-importer "only when it is satisfied that he has carried his dual burden of proof with a preponderance of the evidence on both points." Since in this case the plaintiff has not borne this dual burden of proof, the presumption of correctness that attaches to the classification of the customs officials has not been overcome and the protests are overruled.

Judgment will issue accordingly.