### BADISCHE CO. *v.* UNITED STATES (No. 1094).[1]

SAMPLES OF MERCHANDISE AND FREE ENTRY.

These samples that show coloring results are designed for the use of salesmen who place dyes on the market; they are not samples of the dyes themselves. The regulations provide that samples to be entitled to free entry must be such as "are obviously intended for use merely as samples of merchandise to sell the class of goods which they represent." These goods were properly assessed as printed matter under paragraph 416, tariff act of 1909.

United States Court of Customs Appeals, May 31, 1913.

APPEAL from Board of United States General Appraisers, Abstract 31012 (T. D. 33055). [Affirmed.]

*Walden & Webster* for appellants.

*William L. Wemple,* Assistant Attorney General, for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise here, which for convenience will be hereinafter referred to as samples, consists of pasteboard books, folders, and

---

cards, within, upon, or attached to which are small pieces of textile fabrics, yarns, etc., in various colors, which illustrate the coloring results produced by the use, in a certain manner and under certain conditions, of dyes made by Badische Anilin- & Soda-Fabrik, Ludwigshafen on the Rhine, Germany. These samples are furnished by the manufacturers to the appellants, who in their protest style themselves as the sole importers of the products of the above-named manufacturer, and are distributed among branch houses, to be used by salesmen to promote the sales of the dyes. They are not samples of the dyes, but are samples of the coloring results which may be produced by using the same. Each sample illustrating such results is identified by a certain printed number near it, and upon the same or an opposite page, identified by the same number, is printed the name or description of the dye used in coloring it and other information in regard thereto for the guidance of the purchaser of the dyes in selecting the shade he desires and its treatment to produce the same in the article to be colored. The importers pay nothing for these samples, nor do they sell them, but they sell the dyes on the strength of the samples, and they are attractive in design and appearance.

The merchandise was in the invoice and entry valued at the cost of manufacture, plus 10 per cent, and was assessed at 25 per cent ad valorem as printed matter under paragraph 416 of the tariff act of 1909, which assessment was upon hearing sustained by the Board of General Appraisers.

Importers did not appeal to reappraisement and the sole contention they make here is that the samples are entitled to free entry by virtue of regulations of the Secretary of the Treasury, and they cite article 939 of the regulations of 1853, article 386 of 1874, article 398 of 1884, article 561 of 1899, article 766 of 1908, T. D. 4828, and T. D. 31771.

It is unnecessary to exhaustively quote from these regulations, but sufficient to say that they appear to recognize from the earliest date mentioned the fact that samples of goods, such, for instance, as small strips or pieces of various fabrics and small quantities of raw material to be used as showing the kind and quality of the goods they *represent* which are sold on such samples ought to be given free entry. The regulations of 1908 (see art. 766 *et seq.*) provide that collectors shall cause a daily record to be kept of the receipt and delivery of all articles of no mercantile value, not for sale or subject to duty or formal entry; that various samples intended for use in selling the class of goods they represent are free of duty; that imported goods of any description, given value in the invoice or entry and not expressly exempted from duty by law, must be assessed, even though the appraiser returns the articles of no commercial value; that articles subject to duty entered on pro forma invoices as samples of no commercial value and so returned by the appraising officer shall never-

theless be dutiable if collectors are satisfied upon production of the invoices that the so-called samples have a dutiable value, in which case reappraisement should be ordered.

In T. D. 4828, dated April, 1881, the Treasury Department somewhat exhaustively reviewed the subject of samples, and said, among other things, in substance that the law contained no provision for exempting samples from payment of duty, and that it was only upon the theory that they had no commercial value and were not merchandise within the meaning of the tariff acts that authority had been exercised to allow their free delivery. It also said that pieces of cloth and other textile fabrics, buttons of various patterns, single gloves or stockings, and representatives of other classes of goods which were obviously intended for use merely as samples by which to sell the class of goods they represented, were to be regarded as having no commercial value and free of duty.

In T. D. 31771, dated July, 1911, the last-mentioned ruling was reviewed and the following language used:

Samples brought into this country for the purpose of soliciting orders, not intended for sale, and which do not mingle in the commerce of the country, should not be considered as imported merchandise within the meaning of the tariff act. They are incidents of commerce, rather preliminaries to importations than actual importations in the strict sense.

· You will therefore admit free of duty all bona fide samples which are obviously intended for use merely as samples of merchandise by which to sell the class of goods which they represent, irrespective of the question of their commercial value. On the other hand, samples intended for sale or which are not imported in good faith as samples within the definition above set forth, shall be deemed to be articles of merchandise and shall be charged with the appropriate rate of duty according to the class of goods to which they belong.

T. D. 4828 is hereby modified accordingly.

It is by virtue of this ruling and the fact that they were given an entered value that the samples in this case were assessed for duty.

The evidence tends to show that for some time prior to this ruling samples like those at bar had been admitted free of duty.

In T. D. 13677, decided in 1892, the Board of General Appraisers exhaustively reviewed the subject of samples and stated they had held in a series of decisions that where imported merchandise was invoiced and entered at a given valuation which was reported by the local appraiser as correct or where he had made the appraisement of the merchandise in compliance with the law, his finding could not be collaterally changed by protest, but could only be varied by calling for reappraisement as provided by law.

In T. D. 16426, decided in 1895 by the Board of General Appraisers, certain shade cards, not designed for sale and having no salable value and of construction, appearance, and use apparently very similar to the merchandise in this case, were found by the board not to be "dyes, nor samples of merchandise, but articles designed to exhibit results to be obtained by the use of certain dyes which protestants

deal in and intended to advertise their goods as well as instruct purchasers in the use of the same" and were held dutiable.

In T. D. 21327, decided by the board in 1899, sample books, which had been valued in the invoice and by the appraiser assessed for duty, were claimed to be free of duty as specimens. They were not intended for sale. No appeal to reappraisement was made by the importers. The board said it had held in such circumstances that the remedy of the importers was to appeal to reappraisement and that in the case then before them the importers themselves, having valued the merchandise in the invoice, section 7 of the act of June 10, 1890, which provided "that duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value," was applicable and mandatory and that the goods were dutiable.

In the case now before us the board overruled the protest on the ground that the remedy was in the first instance by appeal to reappraisement.

Without considering the effect of the act of 1890, above mentioned, and which is still in force (see subsection 7 of section 28 of the present tariff act), we think this case may be disposed of by saying that the claimed samples here are not the samples covered by rulings and regulations of the Treasury Department, because they are not *samples of merchandise to be sold*, but are samples illustrating the results which may be produced by the merchandise to be sold.

It is said by the importers in their brief that the practice of admitting samples free of duty has been so long and well established by the regulations of the Treasury Department and the practice thereunder that it should not be changed except by act of Congress. We do not agree with this view. It is only by virtue of the rulings of the department that any samples have been admitted to free entry, because those samples as well as others are within the term "merchandise" as defined in section 2766 of Revised Statutes, which provides that merchandise for tariff purposes "may include goods, wares, and chattels of every description capable of being imported," and also are within the present tariff law, which in effect provides, in its specific and "catch-all" provisions, for the assessment of duties upon all imported merchandise unless free entry is elsewhere therein given. The importers at best can only claim under the *favor* of the Treasury regulations. These regulations provide that samples to be entitled to free entry must be such as "are obviously intended for use merely as samples of merchandise to sell the class of goods which they represent," which concededly these are not.

If it were held these importations were samples within the meaning of the Treasury regulations, it would seem, in view of the holdings of the Board of General Appraisers referred to, that the initial step to be taken by the importers to obtain relief should have been an appeal to reappraisement.

The judgment of the Board of General Appraisers is *affirmed*.