(C.D. 3087)

LONDON RECORDS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided August 21, 1967)

*Barnes, Richardson & Colburn* (*Hadley S. King, Earl R. Lidstrom,* and *Joseph Schwartz* of counsel) for the plaintiff.

*Carl Eardley,* Acting Assistant Attorney General (*Glenn E. Harris* and *Andrew P. Vance,* trial attorneys), for the defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge

OLIVER, Judge: The protest at bar concerns an importation of merchandise invoiced as "London Records LL–DJ 12″ Long Playing (Promotional Samples—Not for Sale * * *)." The collector assessed them with duty at 10 per centum ad valorem as phonograph records under item 724.25 of the Tariff Schedules of the United States. It is not disputed that the articles are phonograph records, plaintiff's sole claim being that they are entitled to duty-free status under the provisions of item 860.30 of the tariff schedules as sample merchandise.

The tariff provisions involved read as follows:

724.25    Phonograph records (except those provided for in item 724.15) _____ 10% ad val.

860.30    Any sample (except samples covered by item 860.10 or 860.20), valued not over $1 each, or marked, torn, perforated, or otherwise treated so that it is unsuitable for sale or for use otherwise than as a sample, to be used in the United States only for soliciting orders for products of foreign countries _____ Free

It was stipulated by the parties that the records are less than $1 each in value.

Mr. D. H. Toller-Bond, president and former executive vice president of London Records, Inc., a subsidiary of Decca Record Company, Ltd., of London, testified on behalf of the plaintiff. He stated that he was familiar with his company's products, policies, and practices, and that the business of London Records was to sell both foreign and domestically produced records. All of the records involved in this litigation are produced in England by Decca.

Plaintiff's exhibits 1 and 2 were received in evidence as representative of the merchandise in issue. They are albums containing several selections on each side. To each record there is affixed a white label bearing the words "Made In England—Not For Sale" and the letters "DJ" are inscribed next to the LL record number. The consumer record, by contrast (plaintiff's collective exhibit 3), has a red and silver label with only an LL number appearing thereon. The white label records are suitable for playing in their imported condition.

The witness further testified that, when the sample records are received from England, they are sent out to their distributors, to record reviewers, and to commercial and college radio stations throughout the country. There is no charge made for such distributions, the purpose being to achieve public exposure to the product in expectation of creating or stimulating a demand thereby. Radio stations are urged to, and disc jockeys frequently and notoriously do, mention the title of the composition and the name of the performing artist. Such information is usually sufficient to allow a prospective purchaser to identify the particular album at his retail outlet. Reviewers' written comments, of course, are a matter of publication.

Before the introduction of the white labels, together with their appropriate markings, promotional samples sometimes found their way into the market. However, according to Mr. Toller-Bond, such improprieties have now been effectively stopped.

The national promotion manager for album products at London Records, Inc., Mr. Thomas Virzi, testified as plaintiff's second witness. It is part of his job to see to it that promotional (white label) records are distributed to reviewers and radio stations across the country. He determines what quantities will go to what areas and they are then sent to the promotional personnel of their distributors who in turn distribute them to the radio stations in their respective areas. He stated that he was not responsible for soliciting orders for consumer records and that the promotional merchandise is not distributed to record stores. Exhibit 4 was received in evidence as an office copy of the distribution breakdown for plaintiff's exhibit 1.

At the conclusion of the trial, plaintiff's counsel openly conceded that disc jockeys and radio stations do not solicit orders for the pur-

chase of records and that the station is under no obligation to play any of the records so received.

The issue before this court has been the subject of litigation under substantially the same statutory language embodied in the provisions of paragraph 1821 (a) and (b) of the Tariff Act of 1930, as amended by Public Law No. 85–211 (71 Stat. 486) covering the duty-free status of sample merchandise. *Carson M. Simon & Co.* v. *United States*, 46 Cust. Ct. 118, C.D. 2243; *Italian Drug Importing Co., Inc.* v. *United States*, 46 Cust. Ct. 243, C.D. 2263; *Swissedent International* and *Hoyt, Shepston & Sciaroni* v. *United States*, 47 Cust. Ct. 174, C.D. 2298. The parties have cited these cases as authority for the position of each.

In the *Carson M. Simon* case, *supra*, an American company had imported samples of French and Italian wallpaper in book form and had distributed them, unsolicited, to decorators throughout the country for the purpose of obtaining orders for the foreign products exhibited. Claim was made for duty-free status under paragraph 1821 (a) and (b), as amended, *supra*, it appearing from the evidence that the sample merchandise itself was unsuitable for use as wallpaper. The defendant contended that the domestic ownership of the samples nullified application of this provision. In sustaining plaintiff's claim, and in examining the legislative history behind the statute, the court held there was no ownership restriction as contended by the Government and that the stated object of expanding international trade was accomplished where distribution of the sample articles would result in the purchase of products of foreign manufacture.

The *Italian Drug* case, *supra*, involved importations of samples of vitamins, manufactured in Italy and distributed in this country by the manufacturer's sole agent to physicians who, in turn, gave them to their patients. The merchandise was marked "Sample, not for sale." It was stipulated that the purpose of such a practice was "to create a demand for such products." Even though temporary benefit was derived by the users (patients), we held that such importations were within the contemplation of paragraph 1821 (a) and (b), as amended, *supra*, inasmuch as the end result of this practice was predicated upon the promotion of future orders of the vitamins so that druggists and drug houses would stock them, and the intent behind the law, as discussed in the *Carson M. Simon* case, *supra*, would be realized.

The *Swissedent International* case, *supra*, dealt with samples of artificial teeth distributed in this country to dentists and dental technicians to obtain their orders for the needs of their practices. Following the *Carson M. Simon* and the *Italian Drug* cases, this merchandise was also held to be free of duty under the provisions of paragraph 1821 (a) and (b), as amended, *supra*.

Plaintiff argues, and we agree, that the "chain of solicitation" revealed by the facts in this case is sufficiently analogous to that present in the *Italian Drug* case, *supra*, so as to require the same result. In that case physicians were contacted as the natural mediums for reaching potential users and purchasers of the product represented by the sample. In the instant situation, disc jockeys with their radio shows stand in a similar position with respect to their natural entré to the record-buying public. In both cases, the purpose of the distribution was to create a demand for the products through exposure to public consumption.

Of course, the intermediary users, the physician as well as the disc jockey, possessed ulterior purposes in their respective roles in the distribution of the samples. The physician had the health of his patients in mind while the "DJ" offered entertainment to his listeners. Neither was *per se* soliciting orders with a financial interest in the business of selling the products. Nevertheless, such purposes must be viewed as incidental and wholly subordinate to what plainly appears as the sole *motivating* purpose behind the importation and distribution of the samples—creation of demand for future orders.

The defendant's arguments in this case are addressed to the proposition that the samples have not been shown to have been used for solicitation purposes alone in that (1) they were not returned or destroyed; (2) many listeners to radio record shows do not purchase records; and (3) there is no evidence to negate the payment of a fee by radio stations to copyright holders for playing a copyrighted musical piece on the air.

As to the first argument, we find nothing in the statute requiring that sample merchandise, once distributed, must be returned or destroyed. In the *Carson M. Simon* case, *supra*, although the samples were requested to be returned, many were kept, presumably until their usefulness was over. The vitamins in the *Italian Drug* case, *supra*, having the same intrinsic worth as the product they represented, were presumably used by the physicians on their patients. They were marked "Sample, not for sale." Similarly, the evidence in this case supports the presumption that the white label records are used by radio stations until they are worn out or lose their appeal. They are clearly marked "* * * Not For Sale" and never appear on the record market (R. 26–27). Evidence to rebut that presumption would have to be forthcoming from the defendant. It will not be assumed to exist.

With respect to defendant's second argument, that many radio listeners do not in fact purchase the records they hear, it can be safely said that such is the case with every incident of sample merchandising.

Nevertheless, a sample sampled is a solicitation, although it may never result in a sale.

Finally, there can be nothing gained in the purpose of this litigation by examing statutory and case law respecting the payment of fees to owners of copyrighted works. The merchandise involved in this case is records produced abroad by a foreign manufacturer and the samples representing that product are distributed by London Records, Inc., in this country free of charge (R. 13). If money is paid by radio stations to a copyright holder of the songs appearing on those records, it does not amount, in our opinion, to an intervening use of a kind sufficient to destroy the soliciting purpose for which the items are distributed. The fee payment would not alter the use made by the radio stations which we have already characterized as intermediate and subordinate. Such a fee would be paid, in any event, for the use of the songs and not the product of Decca Records, Ltd.

As it was noted in the *Italian Drug* case, *supra*, the samples there in issue differed from those in the *Carson M. Simon* case, *supra*, in that they had to be consumed in order to be effectively sampled. So here, the nature of the instant samples demands that they be heard to be effective. Since it was one of the stated objectives of the International Convention, which gave rise to the statutory language respecting sample merchandise, to apply to "samples of goods of all kinds," [1] the methods of solicitation will necessarily be as varied as the merchandise being offered. In light of the purposes of the law and based upon the evidence before us, we hold that the phonograph records in this case represent sample merchandise within the purview of item 860.30 of the tariff schedules and, as such, they are free of duty. The protest claim is thus sustained and judgment will be rendered accordingly.

(C.D. 3088)

SCHICK X-RAY CO., INC. *v.* UNITED STATES

---

[1] International Convention to Facilitate the Importation of Commercial Samples and Advertising Material (8 U.S.T. 1636).